# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **DEREK THOMPSON** & | * | |
| **DOUGLAS SCOTT**, on behalf of | | |
| themselves and those similarly | * | Case No. 2:22-cv-2771 |
| situated, | | |
| | * | Judge |
| Plaintiffs, | | |
| v. | * | Magistrate Judge |
| | | |
| **ADVANCED DRAINAGE** | * | **JURY DEMAND ENDORSED HEREON** |
| **SYSTEMS, INC.**, | | |
| c/o CT Corporation System | * | |
| 4400 Easton Commons Way, Suite 125 | | |
| Columbus, Ohio 43219, | * | |
| | | |
| Defendant. | * | |

## PLAINTIFFS' COLLECTIVE AND CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, KENTUCKY LAW, AND NEW YORK LAW

Now come Named Plaintiffs Derek Thompson ("Named Plaintiff Thompson") and Douglas Scott ("Named Plaintiff Scott") (Named Plaintiffs Thompson and Scott hereinafter "Named Plaintiffs"), by and through undersigned counsel, individually and on behalf of other members of the general public similarly situated, who hereby file their Collective and Class Action Complaint against Advanced Drainage Systems, Inc. ("Defendant") and allege as follows:

## I.    INTRODUCTION

1.    This case challenges one or more policy/policies and/or practice(s) of Defendant that violate(s) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19; Kentucky Revised Statute ("KRS") §§ 337, *et seq.*; and New York Labor Law ("NYLL"), §§ 190, *et seq.*, and its supporting regulations.

2.      Named Plaintiffs bring this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer . . . by any one or more employees for and on behalf of herself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Named Plaintiffs bring this case on behalf of themselves and other "similarly-situated" persons who may join this case pursuant to Section 216(b).

3.      Named Plaintiff Thompson also brings this case as a class action under Federal Rule of Civil Procedure Rule 23 pursuant to KRS § 337.385(2).

4.      Named Plaintiff Scott also brings this case as a class action under Federal Rule of Civil Procedure Rule 23 pursuant to NYYL.

## II.    **JURISDICTION AND VENUE**

5.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for violations of the FLSA, 29 U.S.C. § 216(b).

6.      This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. § 1367, as this Complaint raises additional claims pursuant to the laws of Kentucky and New York over which this Court maintains supplemental subject matter jurisdiction because they form a part of the same case or controversy.

7.      Venue is proper in this forum pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to their claims occurred in the Southern District of Ohio; Defendant maintains its headquarters located at 4640 Trueman Blvd., Hilliard, Ohio 43026, which is in this judicial district; and/or Defendant otherwise conducted substantial business in the Southern District of Ohio, Eastern Division.

### III.    FACTUAL ALLEGATIONS

#### A.    Named Plaintiff Thompson

8.    Named Plaintiff Thompson is an individual, a United States citizen, and a resident of the Commonwealth of Kentucky.

9.    Named Plaintiff Thompson worked for Defendant in a variety of hourly, non-exempt positions, including as a yard employee, a downstream technician, and most recently as a materials handler, all of which occurred from approximately September 2013 until the end of July 2021 at one of Defendant's production facilities, located at 121 Buck Creek Church Road, Livermore, Kentucky 42352.

10.    At all times relevant, Named Plaintiff Thompson performed non-exempt job duties for Defendant, including operating a machine on the production line, moving materials from inside of the facility to the yard, and assisting with carrying supplies to the trucks for the convenience of the driver.

11.    At all times relevant, Named Plaintiff Thompson was compensated on an hourly basis and never on a salaried basis.

12.    As such, Named Plaintiff Thompson is an "employee" as defined in the FLSA and KRS §§ 337, *et seq*.

13.    Named Plaintiff Thompson performed overtime work in one or more workweeks.

14.    Named Plaintiff Thompson's Consent to Join Form is filed herewith, pursuant to 29 U.S.C. § 216(b), and attached as **Exhibit A**.

#### B.    Named Plaintiff Scott

15.    Named Plaintiff Scott is an individual, a United States citizen, and a resident of the Commonwealth of Pennsylvania.

16.     Named Plaintiff Scott worked for Defendant as a downstream technician / line operator, which is an hourly, non-exempt position, from approximately 2018 until around September 2020 at one of Defendant's production facilities located at 1 William Donnelly Indus. Pkwy, Waverly, New York 14892.

17.     At all times relevant, Named Plaintiff Scott performed non-exempt job duties for Defendant, including operating a machine on the production line and ensuring production was maintained on his line to keep production numbers as high as possible as instructed by his supervisors and plant manager.

18.     At all times relevant, Named Plaintiff Scott was compensated on an hourly basis and never on a salaried basis.

19.     As such, Named Plaintiff Scott is an "employee" as defined in the FLSA and Article 6, § 190 of the NYLL.

20.     Named Plaintiff Scott performed overtime work in one or more workweeks.

21.     Named Plaintiff Scott's Consent to Join Form is also filed herewith, pursuant to 29 U.S.C. § 216(b), as **Exhibit A**.

C.      **Opt-In Plaintiffs Christopher Hill, Sean Brackman, James Leffert, Christian Thayer, Ina Brathwaite, and Stephon Jackson**[1]

22.     Opt-In Plaintiff Christopher Hill ("Hill") worked for Defendant as a line operator / downstream technician from approximately May 2019 until around August 2021 at one of its production facilities located at 1 William Donnelly Indus. Pkwy, Waverly, New York 14892.

23.     At all times relevant, Hill performed non-exempt job duties for Defendant, including operating a machine on the production line and ensuring production was maintained on

---

[1] Attached hereto as **Exhibit B** (collectively hereinafter "Opt-In Plaintiffs").

his line to keep production numbers as high as possible as instructed by his supervisors and plant manager.

24. At all times relevant, Hill was compensated on an hourly basis and never on a salaried basis.

25. As such, Hill is an "employee" as defined in the FLSA and Article 6, § 190 of the NYLL.

26. Hill performed overtime work in one or more workweeks.

27. Opt-In Plaintiff Sean Brackman ("Brackman") worked for Defendant as a line operator / downstream technician from approximately March 2018 until around March 2020 at one of its production facilities located at 1811 E 267th Street, Harrisonville, Missouri 64701.

28. At all times relevant, Brackman performed non-exempt job duties for Defendant, including operating a machine on the production line and ensuring production was maintained on his line to keep production numbers as high as possible as instructed by his supervisors and plant manager.

29. At all times relevant, Brackman was compensated on an hourly basis and never on a salaried basis.

30. As such, Brackman is an "employee" as defined in the FLSA.

31. Brackman performed overtime work in one or more workweeks.

32. Opt-In Plaintiff James Leffert ("Leffert") worked for Defendant as a line operator from approximately October 2021 until around March 2022 at one of its production facilities located at 1811 E 267th Street, Harrisonville, Missouri 64701.

33. At all times relevant, Leffert performed non-exempt job duties for Defendant, including operating a machine on the production line and ensuring production was maintained on

his line to keep production numbers as high as possible as instructed by his supervisors and plant manager.

34.     At all times relevant, Leffert was compensated on an hourly basis and never on a salaried basis.

35.     As such, Leffert is an "employee" as defined in the FLSA.

36.     Leffert performed overtime work in one or more workweeks.

37.     Opt-In Plaintiff Christian Thayer ("Thayer") was employed by Defendant in multiple positions as an hourly, non-exempt employee, including as a line operator / downstream technician from approximately January 2017 until the end of December 2017 at one of Defendant's production facilities located at 240 N. 400 W., North Salt Lake, Utah 84054.

38.     During his time at the Utah facility, he worked as a line operator and downstream technician. In such positions, Thayer primarily performed job duties related to producing/manufacturing pipes in order to keep production of piping high and moving down the line. During this time period, he was compensated on an hourly basis and was never salaried

39.     Thereafter, Thayer moved to Georgia and began working for Defendant as a yard employee from approximately February 2020 until January 2021 at one of its production facilities located at 1005 Valley Drive, Perry, Georgia.

40.     At all times relevant to his employment at the Georgia facility, Thayer performed non-exempt job duties for Defendant, including moving materials from inside of the facility to the yard and assisting with carrying supplies to the trucks. At all times relevant, Thayer was compensated on an hourly basis and never on a salaried basis.

41.     As such, Thayer is also an "employee" as defined in the FLSA.

42.     Thayer performed overtime work in one or more workweeks.

43. Opt-In Plaintiff Ina Brathwaite ("Brathwaite") was employed by Defendant as an hourly, non-exempt employee, as a yard employee from approximately September 2018 until the end of August 2019 at one of its production facilities located at 115 W. Crown Point Rd. Winter Garden, Florida 34787.

44. At all times relevant, Brathwaite performed non-exempt job duties for Defendant, including moving materials from inside of the facility to the yard and assisting with carrying supplies to the trucks.

45. At all times relevant, Brathwaite was compensated on an hourly basis and never on a salaried basis.

46. As such, Brathwaite is also an "employee" as defined in the FLSA.

47. Brathwaite performed overtime work in one or more workweeks.

48. Opt-In Plaintiff Stephon Jackson ("Jackson") was employed by Defendant as an hourly, non-exempt employee, as a yard employee, at three of its production facilities as follows: 16234 13th Street, NE, Buxton, North Dakota (from 2013 until 2018); 2340 US-40, Brazil, Indiana (from 2018 until 2019); and 115 W. Crown Point Road, Winter Garden, Florida 34787 (from 2019 until the end of 2020).

49. At all times relevant, Jackson performed non-exempt job duties for Defendant, including moving materials from inside of the facility to the yard and assisting with carrying supplies to the trucks.

50. At all times relevant, Jackson was compensated on an hourly basis and never on a salaried basis.

51. As such, Jackson is also an "employee" as defined in the FLSA.

52. Jackson performed overtime work in one or more workweeks.

### D.     <u>Defendant Advanced Drainage Systems, Inc.</u>

53.     At all times relevant, Defendant is a foreign for-profit corporation authorized to do business in Ohio. ADS maintains its headquarters located at 4640 Trueman Blvd., Hilliard, Ohio 43026, and it regularly conducts business in this judicial district.

54.     Defendant is a manufacturer of corrugated pipe and services the storm and water waste industry through a global network of domestic and international manufacturing plants and distribution centers.

55.     Defendant offers a complete line of fittings and other products, including sanitary sewer pipe, storm water chambers, and drainage structures (among other products).

56.     Defendant has at least fifty (50) facilities across the continental United States, spanning Ohio, Arizona, California, Colorado, Florida, Georgia, Illinois, Indiana, Iowa, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, New Jersey, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Tennessee, Texas, Utah, Virginia, and Washington.

57.     Defendant employs a variety of hourly, non-exempt positions, including but not limited to downstream technicians, line operators, production employees, material handlers, and yard employees.

58.     Defendant pays all of these positions on an hourly basis.

59.     As a result, at all times relevant, Defendant was also an "employer" as that term is defined by the FLSA, KRS, and NYLL due to its employment of Named Plaintiffs, Opt-In Plaintiffs, and those similarly situated as described herein.

60.     At all relevant times, Defendant had direct or indirect control and authority over Named Plaintiffs', Opt-In Plaintiffs', and other similarly situated employees' working conditions,

including matters governing the essential terms and conditions of their employment. At all relevant times, Defendant exercised that authority and control over Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees.

61.     At all relevant times, Defendant had the authority to (and does) hire and fire employees, supervise and control the work schedules and work conditions of employees, determine the rate and method of pay, and/or maintain employee records.

62.     Defendant applied or caused to be applied substantially the same employment policies, practices, and procedures to all employees at all of its locations, including policies, practices, and procedures relating to the payment of wages, overtime, and timekeeping.

63.     At all relevant times, Defendant suffered or permitted Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees to work. The work that Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees performed was for Defendant's benefit.

64.     During relevant times, Defendant maintained control, oversight, and direction over Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees, including the promulgation and enforcement of policies affecting the payment of wages and overtime.

65.     During relevant times, Defendant has benefitted from the work performed by Named Plaintiffs, Opt-In Plaintiffs, and those similarly situated.

66.     During the three (3) years preceding this Complaint, Defendant has operated and controlled an enterprise and employed employees engaged in commerce or in the production of goods for commerce, or has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and Defendant has had an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

67.     Defendant applies or causes to be applied substantially the same employment policies, practices, and procedures to all employees at all of its entities/locations, including policies, practices and procedures relating to payment of and compliance with the FLSA, including overtime wages, timekeeping, maintenance of records, etc.

68.     Defendant has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

69.     Defendant, at all times relevant hereto, was fully aware of the fact that it was legally required to comply with the wage and overtime laws of the United States, the Commonwealth of Kentucky, and the State of New York.

## IV.     COLLECTIVE AND CLASS ACTION ALLEGATIONS

70.     At all times relevant, (1) Defendant was an employer as defined by the FLSA and accompanying state wage and hour laws; (2) Named Plaintiffs, Opt-In Plaintiffs, and those similarly situated employees regularly worked overtime without compensation; and (3) Defendant knew that Named Plaintiffs, Opt-In Plaintiffs, and those similarly situated worked overtime and did not pay them for it, including but not limited to one or more reason(s) alleged below.

71.     Defendant utilizes a companywide timekeeping system that tracks when each hourly employee "punches" or clocks in/out[2] each day.

### (Unpaid Overtime as a Result of Interrupted/Missed Meal Periods)

72.     Once clocked in, Named Plaintiffs, Opt-In Plaintiffs, and similarly situated employees continued working at all times with the exception of a 30-minute unpaid meal break ("bona fide meal break").

---

[2] For all intents and purposes, the terms "punch in" and "clock in" are used interchangeably and have the same meaning herein. In addition, the terms "punch out" and "clock out" also are used interchangeably and have the same meaning.

73.     Defendant maintains a policy/practice of not paying its hourly employees, including Named Plaintiffs and Opt-In Plaintiffs, for thirty (30) minutes each day.

74.     However, Named Plaintiffs, Opt-In Plaintiffs, and those similarly situated regularly did not receive a bona fide meal break.

75.     Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees often were unable to take a meal break or otherwise had their meal breaks interrupted by job duties because they could not abandon their job posts, their meal periods were interrupted by job duties, and they worked through their meal periods due to the fact that they were regularly encouraged by supervisors to complete their job duties in order to meet production goals each shift.

76.     In the instances they were permitted to eat, they either ate quickly and returned to their job posts or ate on the job in order to meet production goals each shift

77.     Consequently, Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees often did not receive a fully uninterrupted bona fide meal break of thirty (30) minutes.

78.     Nevertheless, Defendant required Named Plaintiffs, Opt-In Plaintiffs, and similarly situated employees to not be paid for thirty (30) minutes each day.

79.     Defendant's policy/practice of not paying for a meal break despite suffering or permitting Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees to work on a regular basis and not receive a bona fide meal break violates the FLSA.

80.     Defendant had actual or constructive knowledge that Named Plaintiffs, Opt-In Plaintiffs, and similarly situated others did not receive a fully uninterrupted meal period of thirty (30) minutes but failed to pay them for it anyways.

81.     Instead, Defendant encouraged Named Plaintiffs, Opt-In Plaintiffs, and similarly situated others to focus on production and maintaining high production.

82.     There was no established policy or practice of reporting missed or interrupted meal periods either.

83.     Rather, Defendant simply did not pay employees for missed/interrupted meal breaks regardless of whether Named Plaintiffs, Opt-In Plaintiffs, and similarly situated others were performing job duties during such breaks or not.

84.     For the three (3) years (at a minimum) preceding this Complaint, Defendant applied the same pay practices and policies to all hourly, non-exempt employees at its facilities, including Named Plaintiffs' and Opt-In Plaintiffs'.

85.     Defendant is in possession and control of necessary documents and information from which Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees would likely be able to calculate their on-the-clock damages. Defendant failed to record the necessary and required information to determine all of the time that Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees spent working.

### (Unpaid Overtime Due to Unlawful Rounding)

86.     Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees regularly perform unpaid work before the scheduled start or after the scheduled end of their shifts. Some of the unpaid work is performed on the clock, while other unpaid work is performed off the clock. Regardless of whether the work is on or off the clock, Defendant fails to pay Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees for work performed before or after their scheduled shifts.

87.     The pre-shift work includes meeting with and receiving instruction from supervisors, discussing issues with prior shifts, performing safety checks, completing necessary paperwork, and proceeding out to their respective work areas to relieve the previous shift. Named

Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees were required to be prepared to begin production tasks no later than the scheduled start of their shifts.

88. Despite performing pre-shift work, Defendant does not pay its employees for such work regardless of whether such work is performed on or off the clock.

89. Moreover, despite these employees working up through and including until they clock out each day, which may result in working beyond their scheduled end of their shifts, Defendant regularly only compensated its employees for their scheduled shifts and/or rounded down their compensable hours to their scheduled shifts.

90. Defendant's policy/practice whereby it improperly rounds Named Plaintiffs', Opt-In Plaintiffs', and those similarly situated employees' punch-in and punch-out times down to their scheduled start and scheduled end times violates the FLSA because it fails to compensate employees for all time they have actually worked.

91. As set forth herein, Defendant failed to compensate Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees for all overtime hours worked as a result of pre-shift work, missed or interrupted unpaid meal breaks, and post-shift work.

92. This integral and indispensable unpaid work performed by Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees, as set forth above, was practically ascertainable to Defendant. There was no practical administrative difficulty of recording this integral and indispensable unpaid work by Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees.

93. The unpaid work performed by Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees constituted part of their principal activities, was required by Defendant and was performed for Defendant's benefit.

94.     Despite performing job duties that are integral and indispensable, whether that be prior to or after their scheduled shifts, Defendant compensates only its hourly employees for their scheduled shifts and/or rounds their employees' compensable time down to their scheduled shifts notwithstanding its employees' actual clock in times.

95.     Defendant knowingly and willfully failed to pay Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees as described herein.

96.     For the three (3) years preceding this Complaint, Defendant applied the same pay practices and policies to all hourly, non-exempt employees at its facilities, including Named Plaintiffs and Opt-In Plaintiffs.

97.     Defendant is in possession and control of necessary documents and information from which Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees would likely be able to calculate their on-the-clock damages. Defendant failed to record the necessary and required information to determine all of the time that Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees spent working.

### A.      FLSA Collective Action for Unpaid Overtime Wages

98.     Named Plaintiffs bring Count One of this action on behalf of themselves, pursuant to Section 216(b), and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendant's unlawful conduct (including Opt-In Plaintiffs).

99.     The collective that Named Plaintiffs seek to represent and to whom Named Plaintiffs seek the right to send "opt-in" notices for purposes of the collective action, of which Named Plaintiffs (and Opt-In Plaintiffs) themselves are members, is composed of and defined as follows:

> **All current and former hourly material handlers, production workers, and yard employees of Defendant who were paid for at**

**least forty (40) hours of work in one or more workweek(s) beginning three (3) years prior to the filing of this Complaint and continuing through final disposition of this case (the "FLSA Collective" or the "FLSA Collective Members").**[3]

100.     This action is maintainable as an "opt-in" collective action pursuant to Section 216(b) as to claims for unpaid wages, overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA. In addition to Named Plaintiffs, numerous current and former employees in positions relating to production, material handling, and yard workers are similarly situated with regard to their wages and claims for unpaid wages and damages (including Opt-In Plaintiffs). Examples of other positions impacted by Defendant's pay policies/practices include line operators, downstream technicians, material handlers, and yard employees.

101.     Named Plaintiffs are each representative of those other employees and are acting on behalf of their interests, as well as their own, in bringing this action.

102.     These similarly situated employees are known to Defendant and are readily identifiable through Defendant's business and payroll records. These individuals may readily be

---

[3] The FLSA Collective specifically excludes any putative collective members who meet the conditional certification definition ordered in the companion lawsuit styled as *Loschiavo, et al. v. Advanced Drainage Systems, Inc.*, Southern District of Ohio, Eastern Division, Case No. 2:21-cv-05069-MHW-CMV, ECF No. 22 (Watson, J.) ("*Loschiavo*"). In *Loschiavo*, this Court conditionally certified all putative collective members who meet the following definition: "current and former hourly machine/line operators or yard loaders of Advanced Drainage Systems, Inc. at ADS facilities in Clifford, Michigan; Hamilton, Ohio; Logan Township, New Jersey; London, Ohio; Muncy, Pennsylvania; North Salt Lake, Utah; Owosso, Michigan; Wooster, Ohio who worked 40 or more hours during any workweek beginning January 7, 2019 through the present." Thus, Named Plaintiffs are not seeking to bring claims on behalf of current and former hourly machine/line operators or yard loaders of Defendant at the following facilities: 400 E High Street, London, Ohio 43140; 3113 W Old Lincoln Way, Wooster, Ohio 44691; 770 S. Chestnut Street, Owosso, Michigan 48867; 4800 Marlette Road, Clifford, Michigan 48727; 173 Industrial Parkway, Muncy, Pennsylvania 17756; 2650 Hamilton Eaton Road, Hamilton, Ohio 450112; 300 Progress Court, Logan Township, New Jersey 08085; and 240 N. 400 W, North Salt Lake, Utah 84054.

notified of this action and allowed to opt in pursuant to Section 216(b) for the purpose of collectively adjudicating their claims for unpaid wages, overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA.

**B.   Federal Rule of Civil Procedure 23 Kentucky Class Action for Unpaid Overtime Wages**

103.   Named Plaintiff Thompson brings Counts Two and Three of his KRS § 337 claims pursuant to Rule 23 and KRS § 337.385(2) as a class action on behalf of himself and all other members of the following class:

> **All current and former hourly material handlers, production workers, and yard employees of Defendant who were paid for at least forty (40) hours of work in one or more workweek(s) beginning five (5) years prior to the filing of this Complaint and continuing through final disposition of this case (the "Kentucky Rule 23 Class" or "Kentucky Rule 23 Class Members")**

104.   The Kentucky Rule 23 Class consists of all hourly employees of Defendant who worked in the Commonwealth of Kentucky during the relevant time period above, including but not limited to downstream technicians, line operators, production workers, material handlers, and yard employees.

105.   The Kentucky Rule 23 Class, as defined above, is so numerous that joinder of all members is impracticable.

106.   Named Plaintiff Thompson is a member of the Kentucky Rule 23 Class, and his claims for unpaid wages are typical of the claims of other members of the Kentucky Rule 23 Class.

107.   Named Plaintiff Thompson has no interest that is antagonistic to or in conflict with those interests of the Kentucky Rule 23 Class that he has undertaken to represent.

108.   Named Plaintiff Thompson has retained competent and experienced class action counsel who can ably represent the interests of the entire Kentucky Rule 23 Class.

109. Questions of law and fact are common to the Kentucky Rule 23 Class.

110. Class certification is appropriate under Rule 23(b)(1) because individual actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant with respect to its non-exempt employees defined above in the Kentucky Rule 23 Class.

111. Class certification is appropriate under Rule 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Kentucky Rule 23 Class, making appropriate declaratory and injunctive relief with respect to Named Plaintiff Thompson and the Kentucky Rule 23 Class as a whole.

112. Class certification is appropriate under Rule 23(b)(3) because the questions of law and facts common to the Kentucky Rule 23 Class predominate over questions affecting individual members of the Kentucky Rule 23 Class and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

113. Questions of law and fact that are common to the Kentucky Rule 23 Class include but are not limited to: (a) whether Defendant violated KRS §§ 337, *et seq.*, by failing to pay the Kentucky Rule 23 Class for certain hours worked in excess of forty (40) hours per week as described herein; (b) what amount of unpaid and/or withheld compensation, including overtime compensation, is due to Named Plaintiff Thompson and other members of the Kentucky Rule 23 Class; (c) whether Defendant's violations of KRS §§ 337, *et seq.* were in good faith and if it had reasonable grounds for believing its act or omission was not a violation of KRS §§ 337.020–337.285; (d) whether Defendant kept accurate records as required by KRS § 337.320; (e) whether Defendant violated other laws under the Commonwealth of Kentucky, including KRS §§ 337.355

and 337.365; and (e) what amount of pre- and post-judgment interest is due to Kentucky Rule 23 Class members on the overtime or other compensation that was withheld or not paid to them.

114.    A class action is superior to individual actions for the fair and efficient adjudication of Named Plaintiff Thompson's claims and will prevent undue financial, administrative, and procedural burdens on the parties and the Court. Named Plaintiff Thompson and counsel are not aware of any pending Kentucky litigation on behalf of the Kentucky Rule 23 Class as defined herein. Because the damages sustained by individual members may be modest compared to the costs of individual litigation, it would be impractical for class members to pursue individual litigation against Defendant to vindicate their rights. Certification of this case as a class action will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

### C.    Federal Rule of Civil Procedure 23 New York Class Action for Unpaid Overtime Wages

115.    Named Plaintiff Scott brings Counts Four, Five, and Six of the NYLL claims pursuant to Rule 23 as a class action on behalf of himself, Hill, and all other members of the following class:

> **All current and former hourly material handlers, production workers, and yard employees of Defendant who were paid for at least forty (40) hours of work in one or more workweek(s) beginning six (6) years prior to the filing of this Complaint and continuing through final disposition of this case (the "New York Rule 23 Class" or "New York Rule 23 Class Members")**

116.    The New York Rule 23 Class consists of all hourly employees of Defendant who worked in the State of New York during the relevant time period above, including but not limited to downstream technicians, line operators, production workers, material handlers, and yard employees.

117.    The New York Rule 23 Class, as defined above, is so numerous that joinder of all members is impracticable.

118.    Named Plaintiff Scott is a member of the New York Rule 23 Class, and his claims for unpaid wages are typical of the claims of other members of the New York Rule 23 Class.

119.    Named Plaintiff Scott has no interest that is antagonistic to or in conflict with those interests of the New York Rule 23 Class that he has undertaken to represent.

120.    Named Plaintiff Scott has retained competent and experienced class action counsel who can ably represent the interests of the entire New York Rule 23 Class.

121.    Questions of law and fact are common to the New York Rule 23 Class.

122.    Class certification is appropriate under Rule 23(b)(1) because individual actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant with respect to its non-exempt employees defined above in the New York Rule 23 Class.

123.    Class certification is appropriate under Rule 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the New York Rule 23 Class, making appropriate declaratory and injunctive relief with respect to Named Plaintiff Scott and the New York Rule 23 Class as a whole.

124.    Class certification is appropriate under Rule 23(b)(3) because the questions of law and facts common to the New York Rule 23 Class predominate over questions affecting individual members of the New York Rule 23 Class and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

125.    Questions of law and fact that are common to the New York Rule 23 Class include but are not limited to: (a) whether Defendant violated the NYLL by failing to pay the New York

Rule 23 Class for certain hours worked in excess of forty (40) hours per week as described herein; (b) what amount of unpaid and/or withheld compensation, including overtime compensation, is due to Named Plaintiff Scott and other members of the New York Rule 23 Class; (c) whether Defendant's violations of NYLL §§ 190, *et seq.* were in good faith; (d) whether Defendant kept accurate records as required by NYLL § 196-a(a); (e) whether Defendant violated other laws of the NYLL; and (e) what amount of pre- and post-judgment interest is due to New York Rule 23 Class members on the overtime or other compensation that was withheld or not paid to them.

126.    A class action is superior to individual actions for the fair and efficient adjudication of Named Plaintiff Scott's claims and will prevent undue financial, administrative, and procedural burdens on the parties and the Court. Named Plaintiff Scott and counsel are not aware of any pending New York litigation on behalf of the New York Rule 23 Class as defined herein. Because the damages sustained by individual members may be modest compared to the costs of individual litigation, it would be impractical for class members to pursue individual litigation against Defendant to vindicate their rights. Certification of this case as a class action will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## V.    CAUSES OF ACTION

### COUNT I
### (29 U.S.C. § 207 – FLSA COLLECTIVE ACTION FOR UNPAID OVERTIME)

127.    All of the preceding paragraphs are realleged as if fully rewritten herein.

128.    This claim is brought as part of a collective action by Named Plaintiffs on behalf of themselves, Opt-In Plaintiffs, and the FLSA Collective Members against Defendant.

129.    Defendant's practice and/or policy of not paying Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees as alleged above violated the FLSA, 29 U.S.C. § 207.

130.     Defendant's failure to keep records of all of the hours worked each workday and the total hours worked each workweek by Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees violated the FLSA. *See* 29 C.F.R § 516.2(a)(7).

131.     By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated the provisions of the FLSA.

132.     As a result of Defendant's practices and/or policies, Named Plaintiffs, Opt-In Plaintiffs, and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

133.     The amount of compensation, including overtime compensation, that Defendant has failed to pay Named Plaintiffs, Opt-In Plaintiffs, and the FLSA Collective Members is unknown at this time, as many of the records necessary to make such calculations are in the possession of Defendant and/or were not kept by Defendant.

134.     Named Plaintiffs seek unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available on behalf of themselves, Opt-In Plaintiffs, and the FLSA Collective Members.

## <u>COUNT II</u>
### (KRS §§ 337.385 and 337.050 – RULE 23 CLASS ACTION FOR UNPAID OVERTIME)

135.     All of the preceding paragraphs are realleged as if fully rewritten herein.

136.     Named Plaintiff Thompson and the Kentucky Rule 23 putative Class Members are each an "employee" under KRS § 337.010(1)(e), (2)(a), and § 337.050(1).

137.     Named Plaintiff Thompson and the putative Kentucky Rule 23 Class Members are not exempt because they do not fall within any of the exemptions set forth in KRS § 337.285(2).

138.     Defendant is an "employer" as defined under KRS § 337.010(1)(d) and § 337.050(1).

139.     KRS § 337 sets forth wage and hour laws intended to protect employees and ensure that they are justly compensated.

140.     Pursuant to KRS § 337.285(1), Defendant was required to provide compensation to Named Plaintiff Thompson and similarly situated Kentucky employees at a rate of one-and-one-half times (1.5x) their regular rates of pay for all hours worked over forty (40) in one or more workweek(s).

141.     Defendant's acts or omissions that resulted in a failure to pay Named Plaintiff Thompson and the putative Kentucky Rule 23 Class Members for all hours worked over 40 in one or more workweek(s) constitutes a violation of KRS § 337.285(1).

142.     Defendant's acts or omissions as alleged above were not made in good faith, and Defendant did not have reasonable grounds for believing its acts or omissions did not violate KRS §§ 337.020–337.285.

143.     KRS § 337.050 also requires that employees who work seven (7) days in one workweek be compensated for work done on the seventh day at a rate of one-and-one-half times (1.5x) the regular rates at which they are employed. *See* KRS § 337.050(1).

144.     As a result of Defendant's acts or omissions as alleged above, Named Plaintiff Thompson and the putative Kentucky Rule 23 Class Members are entitled to compensatory damages, liquidated damages, and attorneys' fees and costs for which Defendant is liable.

145.     The exact total amount of compensation, including overtime compensation, that Defendant has failed to pay Named Plaintiff Thompson and the putative Kentucky Rule 23 Class Members is unknown at this time, as many of the records necessary to make such calculations are in the possession of Defendant and/or were not kept by Defendant.

## COUNT III
### (KRS §§ 337.355 & 337.365 – RULE 23 CLASS ACTION)

146. All of the preceding paragraphs are realleged as if fully rewritten herein.

147. KRS § 337.355 requires an employer to provide a meal break no sooner than three (3) hours but no more than five (5) hours after an employee's work shift commences.

148. KRS § 337.365 requires an employer to provide a rest break of at least ten (10) minutes during each four (4) hours worked in addition to the regularly scheduled meal break.

149. Defendant violated KRS §§ 337.355 and 337.365 because it did not provide Named Plaintiff Thompson or other putative Kentucky Rule 23 Class Members with meal or rest breaks, despite the fact that Named Plaintiff Thompson and the putative Kentucky Rule 23 Class Members worked over eight (8) hours in one or more day(s).

150. As a result of Defendant's violations of KRS §§ 337.355 and 337.365, Named Plaintiff Thompson and the putative Kentucky Rule 23 Class Members are entitled to recover from Defendant their unpaid wages for meal and rest breaks.

## COUNT IV
### (NYLL – RULE 23 CLASS ACTION FOR UNPAID OVERTIME)

151. All of the preceding paragraphs are realleged as if fully rewritten herein.

152. Named Plaintiff Scott and the New York Rule 23 Class Members are each an "employee" as defined by Article 6, § 190 of the NYLL.

153. Likewise, Defendant is an "employer" under Article 6, § 190 of the NYLL.

154. The NYLL requires employers to pay their employees at a rate of one-and-one-half times (1.5x) their regular rates of pay in the manner and methods provided in and subject to the exemptions of Sections 7 and 13 of 29 U.S.C. §§ 201, *et seq*. of the FLSA. *See* 12 N.Y.C.R.R. § 142-2.2.

155.     As alleged above, Defendant has failed to pay Named Plaintiff Scott and the putative New York Rule 23 Class Members overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Regulations.

156.     Through its knowing or intentional failure to pay Named Plaintiff Scott and the putative New York Rule 23 Class Members overtime wages for hours worked in excess of forty (40) in one or more workweek(s), Defendant has willfully violated the NYLL.

157.     Due to Defendant's violations of the NYLL, Named Plaintiff Scott and the putative New York Rule 23 Class Members are entitled to recover from Defendant their unpaid overtime wages, liquidated damages, reasonable attorneys' fees, costs, and pre- and post-judgment interest. *See* Art. 6, § 198 of the NYLL.

### <u>COUNT V</u>
### (ARTICLE 6 OF THE NYLL – RULE 23 CLASS ACTION FOR UNTIMELY PAYMENT OF OVERTIME)

158.     All of the preceding paragraphs are realleged as if fully rewritten herein.

159.     The wage provisions of Article 6 of the NYLL, specifically NYLL § 191 and its supporting regulations, apply to Defendant and protect Named Plaintiff Scott and the putative New York Rule 23 Class Members.

160.     NYLL § 191(a) requires manual workers, including Named Plaintiff Scott, to be paid weekly and not later than seven (7) calendar days after the end of the week in which their wages are earned.

161.     By not timely compensating Named Plaintiff Scott and the putative New York Rule 23 Class Members for all overtime worked, Defendant has repeatedly failed to pay Named Plaintiff Scott and the putative New York Rule 23 Class Members overtime wages to which they are entitled

under the NYLL and the supporting New York State Department of Labor Regulations in a timely manner consistent with NYLL § 191.

162.     Defendant has willfully violated the NYLL.

163.     Due to Defendant's willful violations of the NYLL, Named Plaintiff Scott and the putative New York Rule 23 Class Members are entitled to recover from Defendant liquidated damages for all wages not paid in a timely manner, as provided by NYLL Article 6, § 198, reasonable attorneys' fees, costs, and pre- and post-judgment interest.

<u>**COUNT VI**</u>
**(VIOLATION OF NYLL – FAILURE TO PROVIDE MEAL BREAKS RULE 23 CLASS ACTION)**

164.     All of the preceding paragraphs are realleged as if fully rewritten herein.

165.     The NYLL requires that employees provide: a mid-day meal break of at least thirty (30) minutes for employees who work a shift of more than six (6) hours extending over the mid-day meal break from 11:00 a.m. to 2:00 p.m.; an additional meal break between 5:00 p.m. and 7:00 p.m. of at least twenty (20) minutes for employees whose shift started before 11:00 a.m. and continues later than 7:00 p.m.; and/or a forty-five (45) minute meal break at a time midway between the beginning and end of the shift for employees whose shift lasts more than six (6) hours and starts between 1:00 p.m. and 6:00 a.m. *See* NYLL § 162.

166.     As alleged herein, Defendant failed to provide meal breaks required by NYLL § 162 for one or more day(s) that Named Plaintiff Scott and the putative New York Rule 23 Class Members worked.

167.     By way of one non-exhaustive example, Named Plaintiff Scott regularly worked shifts lasting more than six (6) hours in duration between the hours of 1:00 p.m. and 6:00 a.m. but did not receive a meal break of forty-five (45) minutes in duration.

168.     Though the Department of Labor commissioner may permit a shorter time to be fixed for meal breaks than hereinbefore provided, such permit must be in writing and be kept conspicuously posted in the main entrance of the establishment. No such permit is posted.

169.     As such, Defendant's failure to provide the meal periods required by the NYLL was not in good faith.

## VI.  PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiffs request judgment against Defendant and for an Order:

A.     Certifying the proposed FLSA collective action;

B.     Directing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collective, apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA;

C.     Certifying a Kentucky Rule 23 Class under KRS §§ 337, *et seq.*;

D.     Certifying a New York Rule 23 Class under the NYLL;

E.     Finding that Defendant has failed to keep accurate records in accordance with the FLSA, KRS § 337.320, and NYLL, and that Named Plaintiff, Opt-In Plaintiffs, the FLSA Collective Members, the Kentucky Rule 23 Class Members, and the New York Rule 23 Class Members are entitled to prove their hours worked with reasonable estimates;

F.     Finding that Defendant's wage and hour policies and/or practices as alleged herein violate the FLSA; KRS §§ 337, *et seq.*; and the NYLL;

G.     Declaring judgment against Defendant for damages for all unpaid overtime compensation owed to Named Plaintiff, Opt-In Plaintiffs, the FLSA Collective Members, the Kentucky Rule 23 Class Members, and the New York Rule 23 Class Members during the

applicable statutory period under the FLSA; KRS §§ 337, *et seq.*; and the NYLL, and continuing through trial;

H.      Declaring judgment against Defendant for liquidated damages pursuant to the FLSA; KRS §§ 337, *et seq.*; and the NYLL in an amount equal to all unpaid overtime compensation owed to Named Plaintiffs, Opt-In Plaintiffs, the FLSA Collective Members, the Kentucky Rule 23 Class Members, and the New York Rule 23 Class Members and all other similarly situated employees during the applicable statutory period under the FLSA; KRS §§ 337, *et seq.*; and the NYLL and continuing through trial;

I.      Awarding to Named Plaintiffs a service award for their efforts in remedying various pay policies/practices as outlined above;

J.      Awarding to Named Plaintiffs, Opt-In Plaintiffs, the FLSA Collective Members, the Kentucky Rule 23 Class Members, and the New York Rule 23 Class Members costs and disbursements and reasonable allowances for fees of counsel and experts as well as reimbursement of expenses;

K.      Directing Defendant to pay reasonable attorneys' fees and all costs connected with this action;

L.      Granting Named Plaintiffs leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery;

M.      Declaring judgment for all civil penalties to which Named Plaintiffs, Opt-In Plaintiffs, the FLSA Collective Members, the Kentucky Rule 23 Class Members, and the New York Rule 23 Class Members, and all other similarly situated employees may be entitled; and

N. Awarding such other and further relief as to this Court may deem necessary, just, or proper.

Respectfully submitted,

**COFFMAN LEGAL, LLC**

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
Adam C. Gedling (0085256)
Kelsie N. Hendren (100041)
1550 Old Henderson Rd.
Suite #126
Columbus, Ohio 43220
Telephone: (614) 949-1181
Facsimile: (614) 386-9964
Email: mcoffman@mcoffmanlegal.com
agedling@mcoffmanlegal.com
khendren@mcoffmanlegal.com

**BRYANT LEGAL, LLC**

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
1550 Old Henderson Road, Suite 126
Columbus, Ohio 43220
Phone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com

Matthew B. Bryant (0085991)
3450 W Central Ave., Suite 370
Toledo, Ohio 43606
Telephone: (419) 824-4439
Facsimile: (419) 932-6719
Email: Mbryant@bryantlegalllc.com

*Attorneys for Named Plaintiffs and those similarly situated*

## JURY DEMAND

Plaintiffs request a trial by a jury of eight (8) persons.

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman

*Attorneys for Named Plaintiffs and those similarly situated*