# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Ronnie Loschiavo and Shawn Selby, *et al.*, *on behalf of themselves and those similarly situated,*

     Plaintiffs,

     v.

Advanced Drainage Systems, Inc.,

     Defendant.

Case No. 2:21-cv-5069

Judge Michael H. Watson

Magistrate Judge Vascura

---

Derek Thompson, *et al.*, *on behalf of themselves and those similarly situated,*

     Plaintiffs,

     v.

Advanced Drainage Systems, Inc.,

     Defendant.

Case No. 2:22-cv-2771

Judge Michael H. Watson

Magistrate Judge Vascura

## OPINION AND ORDER

Ronnie Loschiavo, Shawn Selby, Derek Thompson, and Douglas Scott (collectively, the "Named Plaintiffs"), on behalf of themselves and three putative classes (collectively, the "Class Members"), move the Court for final approval of their class action settlements. ECF No. 65.[1] For the reasons below, the Named Plaintiffs' motion is **GRANTED**.

---

[1] Unless otherwise indicated, the Court refers to filings on the docket in Case No. 2:22-cv-2771.

# I.    BACKGROUND

In October 2021, Ronnie Loschiavo and Shawn Selby sued Defendant for unpaid overtime wages and other relief under the Fair Labor Standards Act ("FLSA") and analogous Ohio state laws.  ECF No. 1, Case No. 2:21-cv-5069. Loschiavo and Selby asserted their FLSA claims as a collective action and their state-law claims as class claims under Federal Rule of Civil Procedure 23.  *Id.*

In July 2022, Derek Thompson and Douglas Scott sued Defendant, also seeking unpaid overtime wages and other relief under the FLSA and analogous state laws (Kentucky and New York).  ECF No. 1.  Like Loschiavo and Selby, Thompson and Scott asserted their FLSA claims as a collective action and their state-law claims as Rule 23 class claims.  *Id.*

## A.    Procedural History

In May 2024, the Court consolidated the *Lochiavo* action and the *Thompson* action into one proceeding.  ECF No. 46; ECF No. 62, Case No. 2:21-cv-5069.  Over the course of several months, the parties exchanged discovery, including "payroll and time punch data," and engaged in preliminary settlement discussions.  ECF No. 55 at PAGEID ## 868–69.  The parties then pursued mediation in August 2024 with mediator Vivien Shelanski.  *Id.*  Through mediation, the parties reached a settlement of the FLSA collective and state-law class claims, the terms of which were incorporated into a Settlement Agreement, ECF No. 58-1.

## B.    Settlement Agreement

The settlement encompasses around 2,000 of Defendant's current or former hourly, non-exempt employees.  Coffman Decl. ¶ 18, ECF No. 55-2.  This figure is divided into four groups of plaintiffs:

1.   The FLSA Collective;

2.   The putative Rule 23 Ohio Class ("Ohio Class");

3.   The putative Rule 23 New York Class ("New York Class"); and

4.   The putative Rule 23 Kentucky Class ("Kentucky Class").

*Id.* ¶¶ 16–20; Settlement Agmt. ¶ 12, ECF No. 58-1.  Group (1) is exclusive in that those who opt into the FLSA Collective may not also be members of Groups (2), (3), or (4).  Settlement Agmt. ¶ 22, ECF No. 58-1.  The inverse is also true— putative members of the Ohio, Kentucky, and New York Classes (collectively, the "Rule 23 Classes") who did not opt into the FLSA Collective are not part of that collective because the opt-in period has closed.  *Id.* ¶ 23.

For settlement purposes, the Ohio Class includes "all hourly, non-exempt production/yard workers who worked for Defendant at any of its facilities in Ohio from October 18, 2019, through the date of Court preliminary approval of the Settlement."[2]  Settlement Agmt. ¶ 24, ECF No. 58-1.  Loschiavo serves as the representative for the Ohio Class.  *Id.*  The New York Class includes "all hourly, non-exempt production/yard workers who worked for Defendant at any of its

---

[2] The Court granted preliminary approval of the class action settlement on May 16, 2025.  ECF No. 59; *see also* Section I.C. below.

facilities in New York from July 12, 2016, to the date of Court preliminary approval of the Settlement." *Id.* ¶ 26.  Scott serves as the representative for the New York Class.  *Id.*  Finally, the Kentucky Class includes "all hourly, non-exempt production/yard workers who worked for Defendant at any of its facilities in Kentucky from July 12, 2017, to the date of Court preliminary approval of the Settlement."  *Id.* ¶ 25.  Thompson serves as the representative for the Kentucky Class.  *Id.*  The Court refers to Loschiavo, Scott, and Thompson collectively as the "Class Representatives."[3]

Under the Settlement Agreement, Defendant agrees to pay a "Global Settlement Fund" amounting to $1,400,000, which consists of (1) the "Net Settlement Fund," meaning settlement awards (*i.e.*, alleged unpaid overtime compensation) for FLSA Collective members and Class Members; (2) service awards of $10,000 to each Named Plaintiff; (3) reasonable attorneys' fees and litigation expenses; and (4) settlement administration costs.  Settlement Agmt. ¶¶ 27–28, 38, 46–47, ECF No. 58-1.  The Net Settlement Fund reflects approximately 70% of the calculated overtime damages from (1) five minutes of time rounding each day; and (2) one missed meal break each week.  Coffman Decl. ¶ 23, ECF No. 55-2.  Settlement awards will be calculated on a *pro-rata* basis, determined by the number of workweeks in which individual employees worked forty or more hours during the relevant period compared to the total

---

[3] The fourth Named Plaintiff (Selby) is not a Class Member but rather is a member of the FLSA Collective.  ECF No. 56 at PAGEID ## 988–89.

number of workweeks in which all employees worked forty or more hours.  ECF

No. 55 at PAGEID # 870; *see also, e.g.*, ECF No. 58-1 at PAGEID # 1032

(describing calculation of settlement awards).  Individuals will receive a minimum

payment of $10 if their award does not otherwise exceed that amount.

Settlement Agmt. ¶ 58, ECF No. 58-1.

      In exchange, the Settlement Agreement releases Defendant from broadly

defined "Released Claims."  Settlement Agmt. ¶¶ 31–33, 74, ECF No. 58-1.

Relevant here, Class Members release Defendant from, *inter alia*, all claims

"under applicable state wage and hour laws."  *Id*. ¶ 33.

## C.    Preliminary Approval, Notice, and Fairness Hearing

      In January 2025, the parties sought the Court's final approval of the FLSA

Collective settlement[4] and preliminary approval of the Rule 23 Class settlements.

ECF No. 55.  As to the Rule 23 Class settlements, the Court initially denied the

motion without prejudice for, *inter alia*, failure to meet Rule 23(a)'s adequacy-of-

representation prong.  ECF No. 56.  Upon the parties' submission of a renewed

motion that remedied the issues, ECF No. 58, the Court preliminarily approved

the Settlement Agreement and conditionally certified the Rule 23 Classes, ECF

No. 59.  The Court also directed the parties to proceed with their proposed notice

---

[4] Prior to settlement, the Court had approved the issuance of notice to potential opt-in plaintiffs.  *See* ECF No. 30; ECF No. 32, Case No. 2:21-cv-5069.  Around 108 opt-in plaintiffs joined the *Loschiavo* action, and around 279 additional opt-in plaintiffs joined the *Thompson* action.  ECF No. 55 at PAGEID ## 867–68.  In June 2025, the Court granted final approval of the FLSA Collective settlement.  ECF No. 64.

plan, finding that the plan "provides the best notice practicable under the circumstances and thus satisfies the requirements of due process and Federal Rule of Civil Procedure 23." *Id.* at PAGEID # 1074.

Consistent with the Preliminary Approval Order, the Settlement Agreement, and Rule 23(e)'s requirements, the settlement administrator (Analytics Consulting, LLC ("Analytics")) commenced issuing notice. In June 2025, Analytics received a spreadsheet listing the contact information for FLSA Collective members and Class Members. Analytics Decl. ¶ 5, ECF No. 65-1. The spreadsheet included information for 1,950 individuals (381 FLSA Collective members, 1,138 Ohio Class Members, 218 Kentucky Class Members, and 213 New York Class Members). *Id.* Analytics cross-referenced the addresses with the United States Postal Service ("USPS") National Change of Address database and updated the spreadsheet with any new addresses. *Id.* ¶ 6.

Thereafter, Analytics mailed the applicable Court-approved notice[5] to the FLSA Collective members and Class Members by first-class U.S. mail. Analytics Decl. ¶ 7, ECF No. 65-1. Two hundred and thirty-nine notices were returned to Analytics without a forwarding address, so Analytics conducted a skip trace in an attempt to ascertain valid addresses. *Id.* ¶ 8. Consequently, Analytics identified 188 new addresses, and Analytics re-mailed the notices to each of the new

---

[5] The Court approved four different notices: one to FLSA Collective members, one to Ohio Class Members, one to Kentucky Class Members, and one to New York Class Members. Exs. A-D, Settlement Agmt., ECF No. 58-1.

addresses.  *Id.*  Counsel represent that Analytics provided notice to 1,899 of the 1,950 FLSA Collective members and Class Members (around 97.4%).  ECF No. 65 at PAGEID # 1098.  Two Class Members requested to be excluded from the settlement, but no Class Members objected.  Analytics Decl. ¶¶ 9–10, ECF No. 65-1; Analytics Supp. Decl. ¶ 1, ECF No. 67-1.

The parties now move for final approval of their Rule 23 Class settlements, ECF No. 65, and the Court held a Fairness Hearing on September 24, 2025.

## II.    APPROVAL OF CLASS CERTIFICATION FOR SETTLEMENT

To grant final approval of a settlement class, the requirements provided in Rule 23 must be satisfied.  *See* Fed. R. Civ. P. 23.  The Court has already preliminarily approved the Rule 23 Classes for settlement purposes, ECF No. 59, and now finds that the standards required for final approval are satisfied.

## A.    Numerosity

To satisfy numerosity, the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "There is no strict numerical test for determining impracticability of joinder."  *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted).  Indeed, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."  *Gen. Tel. Co. of the Nw., Inc., v. EEOC*, 446 U.S. 318, 330 (1980).  Here, the Rule 23 Classes are comprised of over 1,500 members.  Analytics Decl. ¶ 5, ECF No. 65-1.  Numerosity is satisfied

because it would be impractical, if not impossible, to join all Class Members into one action.

## B. Commonality

To establish commonality, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the Class Members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (internal quotation marks and citations omitted). The claims "must depend upon a common contention[,]" and "[t]hat common contention . . . must be of such a nature that is capable of class wide resolution—which means that determination of its truth or its falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350.

As the Court previously observed, the class claims in this case "turn on the same contentions that Defendant failed to pay all overtime because of its uniformly applied startup/shutdown and meal break policies." ECF No. 59 at PAGEID # 1069. Because those contentions revolve around evidence that does not vary by Class Member, the issue can be fairly resolved—at least for settlement purposes—for all Class Members at once.

## C. Typicality

A class representative's "claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other Class Members, and if his or her claims are based on the same legal theory.'" *Beattie*

*v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082). The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Here, as the Court observed previously, "the class claims each involve Defendant's conduct toward the Class Members. And the Class Representatives (Loschiavo, Thompson, and Scott) properly rely on the same legal theories as the rest of their respective classes. So, their claims are typical of those of the other Class Members." ECF No. 59 at PAGEID # 1069.

## D.   Adequacy of Representation

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Falcon*, 457 U.S. 157–58). To determine the adequacy of representation requirement, a court must consider two elements: "'[(1)] the representative must have common interests with unnamed members of the class, and [(2)] it must appear that the representative[ ] will vigorously prosecute the interests of the class through qualified counsel.'" *Pelzer v. Vassalle*, 655 F. App'x 352, 364 (6th Cir. 2016) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083).

Here, the Class Members share common interests with the Class Representatives, and no conflict exists between the Class Representatives and the Class Members that they seek to represent. And Class Counsel are

thoroughly qualified in wage and hour litigation. *See, e.g.*, Coffman Decl. ¶¶ 5, 7–13, ECF No. 55-2; *see, e.g.*, *Harsh v. Kalida Mfg., Inc.*, No. 3:18-CV-2239, 2021 WL 4145720, at *6 (N. D. Ohio Sept. 13, 2021) (noting "familiar[ity] with the work of Attorneys Matthew Coffman and Daniel Bryant" and finding "that they are both experienced with wage and hour litigation, including class and collective actions"). Thus, adequacy is met.

## E.    Rule 23(b) Requirements

The Named Plaintiffs seek certification under Rule 23(b)(3), *see* ECF No. 55 at PAGEID # 865, which requires them to show that common questions of fact or law predominate over any individual questions and that a class action is superior to other available methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Both elements are met here.

### 1.    Predominance

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 353 (6th Cir. 2011) (citing *Beattie*, 511 F.3d at 564).

Predominance is satisfied here. As the Court observed in its Preliminary Approval Order, "[t]here is one set of operative facts that would render Defendant potentially liable to each potential Class Member, as evident in the Class definition[s]. Each Class Member alleges that Defendant should be held liable

for its failure to pay overtime due to the uniformly applied policies. Consequently, the alleged injuries to Class Members are of the same nature[.]" ECF No. 59 at PAGEID # 1071. Accordingly, the Court finds common questions predominate over individual ones.

### 2. Superiority

Finally, before certifying a class under Rule 23(b)(3), the Court must find that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To make this decision, the Court considers:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.*; *see also, e.g.*, *In re Wasserstrom Holdings, Inc. Data Breach Litig.*, No. 2:23-CV-2070, 2025 WL 1563548, at *5 (S.D. Ohio Apr. 11, 2025).

Here, class treatment is superior to other available methods. The Class Members have little interest in individually controlling separate actions, as the amount of individual damages is likely to be small and far outweighed by the cost of litigation. "[S]mall awards weigh in favor of class suits." *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 631 (6th Cir. 2011)

(citing cases).  The Court is unaware of any litigation about this controversy that is currently pending, by or against the Class Members.  It is desirable to concentrate the litigation in this forum as the parties and, to a lesser extent, the Court has already expended time and resources on this case.  Last, the difficulties in managing a class action do not outweigh the benefits of certifying a class.  So, a class action is clearly the superior method of adjudicating this case.

*   *   *

For these reasons, the Court **CERTIFIES** the Rule 23 Classes for purposes of the settlement using the above definitions; **APPOINTS** Named Plaintiffs Ronnie Loschiavo, Derek Thompson, and Douglas Scott as the Class Representatives for the Ohio, Kentucky, and New York Classes, respectively; and **APPOINTS** Matthew J.P. Coffman and Adam C. Gedling (Coffman Legal, LLC) and Daniel I. Bryant and Matthew B. Bryant (Bryant Legal, LLC) as Class Counsel.

## III.    APPROVAL OF PROPOSED CLASS SETTLEMENT

When deciding whether to approve a proposed class action settlement, the Court must consider whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In making this determination, the Court considers:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 244 (6th

Cir. 2011) (citations and internal quotation marks omitted). The Court "enjoys

wide discretion in assessing the weight and applicability of these factors."

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992)

(citation omitted). For the reasons below, the Court concludes that the Rule 23

Class settlements are fair, adequate, and reasonable.

## A.     The Risk of Fraud or Collusion

First, the Court finds that there is no evidence—or even a suggestion—that

the settlements were the product of fraud or collusion. *See IUE-CWA v. Gen.*

*Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("Courts presume the

absence of fraud or collusion unless there is evidence to the contrary." (citation

omitted)). Rather, the settlements are the result of extensive arm's-length

negotiations over several months with the assistance of a mediator. *See*

Coffman Decl. ¶ 27, ECF No. 55-2; Bryant Decl. ¶ 27, ECF No. 55-2. The Court

concludes that this factor favors settlement approval.

## B.     Complexity, Expense, and Likely Duration of Litigation

Generally, "'[m]ost class actions are inherently complex[,] and settlement

avoids the costs, delays, and multitude of other problems associated with them.'"

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001)

(quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164,

174 (S.D.N.Y. 2000)). Class Counsel represents that "[t]hese cases are

expensive to pursue and require tremendous time and resources." Coffman

Decl. ¶ 6, ECF No. 55-2; *see also Barnes v. Winking Lizard, Inc.*, No. 1:18-CV-952, 2019 WL 1614822, at *6 (N.D. Ohio Mar. 26, 2019) ("Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming.").

Here, the difficulty that Class Members would encounter in proving their claims, the substantial litigation expenses, and the possibility of further delay in recovery due to the appellate process weigh in favor of approving the settlements. Continued litigation would require substantial time, effort, and expense, both to retain qualified experts and to conduct record review and depositions. Settling the case now saves time and money for the parties and time for the Court. Accordingly, this factor favors approving the settlements, which secure substantial benefits for the Class Members without further expenses and the delay, cost, and uncertainty of protracted litigation.

**C. Amount of Discovery**

To confirm that the parties "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed [s]ettlement," the Court must consider the amount of discovery in which the parties have engaged. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006) (citations omitted). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement," courts "should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and

after litigation commenced." *UAW v. Gen'l Motors Corp.*, No. 05-CV-73991, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006) (citation omitted). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.* (citing cases).

In this case, the parties engaged in significant informal discovery and extensive settlement negotiations, such that both sides have been able to analyze the strengths and weaknesses of their positions and determine that the settlement is fair and reasonable under the circumstances. *See* Coffman Decl. ¶ 20, ECF No 55-2. Defendant produced payroll and other wage data required for the parties to construct a damages model, and Class Counsel retained an MA-level analyst to provide a damages calculation. ECF No. 55 at PAGEID # 881. The Court finds that both sides made well-informed decisions to enter into the settlements. This factor thus weighs in favor of approving the settlements.

**D.    The Likelihood of Success on the Merits**

"The most important of the factors to be considered in reviewing a [s]ettlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek*, 636 F.3d at 245 (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).

Here, the risks of litigation and uncertainty of recovery favor appeal. The parties continue to disagree about the merits of the Named Plaintiffs' claims, the

statute of limitations, and liquidated damages. *See* Coffman Decl. ¶ 39, ECF No.

55-2. Moreover, Defendant raised numerous affirmative defenses to the claims

and maintains that Class Members are not entitled to any additional overtime

compensation. ECF No. 55 at PAGEID # 882. Continued litigation would thus

be costly and risky for all. Given the nature of the proposed settlements, the

Court finds that the benefits are proportionate to the Named Plaintiffs' likelihood

of success on the merits. *See, e.g.*, *Connectivity Sys. Inc. v. Nat'l City Bank*, No.

2:08-CV-1119, 2011 WL 292008, at *6 (S.D. Ohio Jan. 26, 2011) (finding

settlement is favored where the "Named Plaintiffs' likelihood of success on the

merits is uncertain"). This factor therefore weighs in favor of approving the

proposed settlements.

## E.    Opinions of Class Counsel and Class Representatives

The recommendation of Class Counsel, skilled in class actions and

corporate matters, that the Court should approve the settlement is entitled to

deference. *See, e.g.*, *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)

("The court should defer to the judgment of experienced counsel who has

competently evaluated the strength of his proofs . . . . [T]he deference afforded

counsel should correspond to the amount of discovery completed and the

character of the evidence uncovered."); *see also Kritzer v. Safelite Sols., LLC*,

No. 2:10-CV-0729, 2012 WL 1945144, at *7, (S.D. Ohio May 30, 2012) ("The

Court gives weight to the belief of experienced counsel that a settlement is in the

best interests of the class."). The Court also considers the approval of the

Named Plaintiffs, particularly where they are significantly involved in the discovery and settlement negotiation process. *See, e.g.*, *Gascho v. Glob. Fitness Holdings, LLC*, Case No. 2:11-CV-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014), *R&R adopted*, 2014 WL 3543819 (S.D. Ohio July 16, 2014), *aff'd*, 822 F.3d 269 (6th Cir. 2016).

Here, that Class Counsel recommends the Court approve the settlement warrants deference, and the Named Plaintiffs have also approved the settlement. *See* Bryant Decl. ¶¶ 38–40, ECF No. 55-2.  Accordingly, this factor supports approving the proposed settlement.

## F.    The Reaction of Absent Class Members

The Court must also consider the reaction of Class Members.  *Poplar Creek*, 636 F.3d at 244; *In re Broadwing*, 252 F.R.D. at 376.  Here, as described above, from a pool of around 1,500 Class Members, none objected after nearly all received notice, and only two requested exclusion.  Analytics Decl. ¶¶ 9–10, ECF No. 65-1; Analytics Supp. Decl. ¶ 1, ECF No. 67-1.  This response from Class Members supports approving the settlement.  *See, e.g.*, *Moore v. Med. Fin. Servs., Inc.*, No. 2:20-CV-02443, 2021 WL 6333304, at *4 (W.D. Tenn. Nov. 30, 2021) (granting final approval when "no objections were filed and only five members requested to be excluded"); *BleachTech LLC v. United Parcel Service, Inc.*, No. 14-12719, 2022 WL 2835830, at *3 (E.D. Mich. July 20, 2022) (noting that no objections to the class action settlement "was a clear indication that the Settlement Class Members support the Settlement").

## G.    The Public Interest

"Public policy generally favors settlement of class action lawsuits." *Hainey*

*v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (citation omitted).  In this

case, the settlement confers immediate benefits on the Class Members, avoids

the risks and expenses of further litigation, and conserves judicial resources.

The Court therefore finds that this factor favors approving the settlement.

\*       \*       \*

The Court concludes that the settlement provides a substantial benefit to

the parties and is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e)(2).

The approval motion, ECF No. 65, is **GRANTED**.

## IV.    ATTORNEYS' FEES AND SERVICE AWARDS

The Named Plaintiffs further seek an award of (1) $466,666.00 in

attorneys' fees (one third of the $1,400,000 common fund); (2) $40,541.14 for

reimbursement of costs and expenses incurred in the litigation; and (3) service

awards of $10,000 for each Named Plaintiff.  ECF No. 55 at PAGEID ## 885–90.

## A.    Attorneys' Fees

Class Counsel requests an attorneys' fees award of not more than one-

third of the total settlement fund.  ECF No. 55 at PAGEID # 888.  "When

awarding attorney's fees in a class action, a court must make sure that counsel is

fairly compensated for the amount of work done as well as for the results

achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir.

1993). Rule 23(h) authorizes a court to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement."

Courts apply a two-part analysis to assess the reasonableness of an attorney fee petition. *See In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007). First, the Court must determine the appropriate method to calculate the fees, using either the percentage of the fund or the Lodestar approach. *Id.* Whichever method is utilized, the Sixth Circuit requires "only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Rawlings*, 9 F.3d. at 516. Second, the Court must consider six factors to assess the reasonableness of the fee. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

Here, the Court applies the percentage of the fund method. *See, e.g.*, *Gascho v. Glob. Health Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (indicating that the district court must make a "clear statement" as to which calculation method is being applied (citation omitted)). Accordingly, the Court will consider the following factors in determining whether the fee request is reasonable under the circumstances:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Moulton*, 581 F.3d at 352 (internal quotation marks and citations omitted).

Under the circumstances of this specific case, particularly where neither Defendant nor any Class Member opposes the fee request and where the Class has received a "substantial benefit," the Court concludes that all of these factors favor approving the requested award of attorneys' fees.

As to the first factor, the Court described above the benefit conferred to the Class Members through settlement. This factor therefore weighs in favor of approving the requested award.

Second, the value of the services favors the proposed fee award. Class Counsel devoted a significant amount of time in litigating the claims to reach a settlement. Coffman Decl. ¶ 46, ECF No. 55-2. These efforts included significant legal research, analysis, and conferring with Named Plaintiffs and others. *Id.* ¶ 44. This factor favors granting a total award of one-third of the total settlement fund.

Third, Class Counsel represents that they took on this case pursuant to a contingency fee agreement. Coffman Decl. ¶ 32, ECF No. 55-2; Bryant Decl. ¶ 32, ECF No. 55-2. In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money with no guarantee of recovery. This factor favors approving the requested fee award. *See, e.g.*, *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litig.*, 268 F. Supp. 2d 907, 936 (N.D. Ohio 2003) ("Absent this class action, most individual claimants would lack the resources to litigate a case of this magnitude.").

The Court next considers whether the fourth factor (society's stake in rewarding attorneys who produce such benefits) favors an award of the requested attorneys' fees. Class actions such as this have a "value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources." *Gascho*, 822 F.3d at 287 (citing cases). Without a class action, Class Members would not have had a strong incentive to pursue recovery because any monetary award would have been severely outweighed by the costs to litigate their case.

The remaining two factors (the complexity of the litigation and the professional skill and standing of the attorneys involved) also support granting the requested award. As touched on above, this is a complex case with nuanced issues and significant litigation. And Class Counsel represent that they have substantial experience representing plaintiffs in federal class action and wage-and-hour litigation. *See* Coffman Decl. ¶ 11, ECF No. 55-2; *see also, e.g.*, *Satterly v. Airstream, Inc.*, No. 3:19-CV-107, 2020 WL 6536342, at *7 (S.D. Ohio Sept. 25, 2020) ("The Court is familiar with the work of Mr. Coffman and Mr. Bryant and finds that they are both well-versed with wage and hour claims, including class and collective actions.").

For these reasons, the Court **APPROVES** the fee award of one-third of the total settlement fund ($466,666.00) to Class Counsel.

## B.    Costs and Expenses

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs in the prosecution of claims, and in obtaining settlement, including but not limited to expenses incurred in connection with document productions, consulting with and deposing experts, travel and other litigation-related expenses." *Karpik v. Huntington Bancshares Inc.*, No. 2:17-CV-1153, 2021 WL 757123, at *9 (S.D. Ohio Feb. 18, 2021) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003)).

Class Counsel aver that they seek reimbursement of expenses necessary and directly related to this litigation.  Coffman Decl. ¶ 48, ECF No. 55-2.  The expenses were incurred to pay filing fees, postage, mediator fees, and costs associated with administering notice and constructing a damages model. *Id.* These are the types of expenses "routinely charged to hourly fee-paying clients and thus should be reimbursed out of the settlement fund." *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (approving expenses submitted pursuant to categories including "the cost of experts and consultants . . . computerized research; travel and lodging expenses; photocopying cost; filing and witness fees; postage and overnight delivery; and the cost of court reporters and depositions").  The Court finds that all of these

costs were reasonable and necessary to litigate and settle this case and therefore **APPROVES** the request of $40,541.14 for litigation expenses.

## C.    Class Representative Awards

Service awards are "efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted).

Here, the Named Plaintiffs move for service awards of $10,000 each ($40,000 total). ECF No. 37 at PAGEID # 459. The Named Plaintiffs have "contributed significant time, effort, and detailed factual information to Class Counsel. Furthermore, they provided Class Counsel with information throughout the pendency of this action, and their efforts played a significant role in enabling the Parties to resolve this matter successfully." ECF No. 55 at PAGEID # 886; *see also* Coffman Decl. ¶ 33, ECF No. 55-2 (describing time and effort expended by Named Plaintiffs). This Court and several others have recently approved service awards equal to or greater than the amounts requested here in similar data breach class action settlements. *See, e.g.*, *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *1 (S.D. Ohio Jan. 18, 2019) (approving

$10,000 service awards for each named plaintiff). In light of this, the Court **APPROVES** service awards to each Named Plaintiff as representatives in the requested amount.

## V. CONCLUSION

For these reasons, the Court **GRANTS** final approval of the Rule 23 Class settlements and enters Final Judgment as follows:

1. Unless otherwise defined, all terms used in this Opinion and Order have the same meanings as defined in the Settlement Agreement.

2. Arms-length and good-faith negotiations between the parties and their counsel, who have extensive experience litigating wage-and-hour claims, resulted in a Settlement Agreement encompassing an FLSA Collective, an Ohio Class, a New York Class, and a Kentucky Class.

3. The Court finds that the Settlement Agreement is fair, reasonable, and adequate, as expressed further herein. The Court also finds that the Settlement Agreement was entered into in good faith, at arm's length, and without collusion. The Court approves and directs consummation of the Settlement Agreement.

4. The Court approves the Release provided in the Settlement Agreement and orders that, as of the Effective Date, the Released Claims will be released as to Released Parties.

5.    The Court awards Class Counsel $466,666.00 in attorneys' fees and

reimbursement of expenses of $40,541.14, to be paid according to

the terms of the Settlement Agreement. This amount of fees and

reimbursement is fair and reasonable. The Court awards the Named

Plaintiffs—Ronnie Loschiavo, Shawn Selby, Derek Thompson, and

Douglas Scott—$10,000 each as representatives to be paid

according to the terms of the Settlement Agreement. The award is

justified based on their service to the FLSA Collective and the Rule

23 Classes.

6.    The Court grants final approval to its appointment of Matthew J.P.

Coffman and Adam C. Gedling (Coffman Legal, LLC) and Daniel I.

Bryant and Matthew B. Bryant (Bryant Legal, LLC) as Class

Counsel.

7.    The parties filed a Joint Motion for Final Approval of FLSA Collection

and Preliminary Approval of Class Action Settlement, ECF No. 55,

which the Court denied without prejudice, ECF No. 56. The parties

then filed their Renewed Joint Motion for Final Approval of FLSA

Collection and Preliminary Approval of Class Action Settlement, ECF

No. 58, which the Court granted. ECF Nos. 59, 64.

8.    Notice was distributed to putative Class Members in the form and

manner approved by this Court.

9.    The Court finds that Class Members were given adequate notice of the pendency of this lawsuit, the proposed settlements, and the date of the Fairness Hearing. The Court further finds that the notice was reasonable and satisfied all the requirements of Federal Rule of Civil Procedure 23 and due process.

10.    The Court finds that the proposed settlements satisfy the standard for final approval of a class-action settlement under Federal Rule of Civil Procedure 23(e). The proposed Rule 23 Classes satisfy the requirements under Federal Civil Rule 23(a) of commonality, numerosity, typicality, and adequacy of representation, as well as the requirements under Federal Civil Rule 23(b) of predominance and superiority. The Class Representatives are adequate representatives of the Rule 23 Classes, as they represent and possess the same interests and suffered the same alleged injuries as other Class Members.

11.    The Court approves the method of calculation and proposed distribution of settlement payments upon the terms and conditions set forth in the Settlement Agreement.

12.    The Court approves the manner and payment of attorneys' fees and costs as set forth in the Settlement Agreement. The parties shall bear their respective attorneys' fees and costs except as provided in the Settlement Agreement.

13. The Court approves the incentive payment to the Named Plaintiffs and the payment to the Settlement Administrator.

14. The Court retains jurisdiction for the purpose of enforcing the Settlement Agreement and dismisses these cases (Case Nos. 2:21-cv-5069 and 2:22-cv-2771) with prejudice.

The Clerk shall terminate ECF No. 65, close this case (Case No. 2:22-cv-2771), and close the other related member case (Case No. 2:21-cv-5069).

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**